

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2581 | **DATE** | 1/3/2005 |
| **CASE TITLE** | DirecTV, Inc vs. Randy Borow | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment [27-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's Motion for Summary Judgment [27-1] is granted. See attached opinion.

*/s/ Charles R. Norgle/*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JAN - 6 2005 | |
| | Notified counsel by telephone. | date docketed | 33 |
| X | Docketing to mail notices. | JS | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DirecTV, Inc., ) | |
| ) | |
| ) | **DOCKETED** |
| Plaintiff, ) | JAN - 6 2005 |
| ) | |
| v. ) | Case No. 03 C 2581 |
| ) | |
| ) | HONORABLE CHARLES R. NORGLE |
| Randy Borow, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, Sr., District Judge

Plaintiff brings its Complaint for violations under the Federal Communications Act, 47 U.S.C. § 605, the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1), and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Plaintiff brings its Motion for Summary Judgment under Fed. R. Civ. P. 56(c). For the following reasons, Plaintiff's Motion for Summary Judgment is granted.

**I. BACKGROUND**[1]

**A. Facts**

This case arises out of the unauthorized use, or "piracy," of Plaintiff DirecTV's ("DT") satellite television, by Defendant Randy Borow ("Borow"). Borow is a resident of Illinois. DT is incorporated in California, and provides digital satellite television programming to its registered customers throughout the United States. In order to receive this satellite television, customers must purchase

---

[1] The court takes the undisputed facts from the parties' Local Rule 56.1 Statements, and notes disputed facts within the text.

1

33

hardware such as a satellite dish, an integrated receiver/recorder ("IRD"), and an access card that operates the IRD. DT encrypts its programs so that only paid customers may view the programming. The programing is transmitted via an encrypted signal to satellites that orbit the earth. The signal is then relayed back to earth, where it can be received by customers who have purchased the access card, IRD, and satellite dish. When a subscriber buys a programing package, and installs the dish, IRD, and access card, he or she is then able to access the encrypted television signal. A subscription to DT and purchasing the hardware is the only lawful way a consumer may view satellite television. In order to prevent the unauthorized use of its signal, DT periodically updates its security system by installing and administering electronic countermeasures ("ECMs"). ECMs sends a signal that targets access cards that have not been authorized by DT, and disables them. In response to DT's security measures, satellite pirates[2] have developed emulators ("EMU"s) that circumvent DT's encryption and simulate certain functions of the DirecTV access card. The EMU is hooked up to a computer that sends a signal to the IRD, which decrypts the television signal. In essence, the emulator makes the satellite believe that the unauthorized user has a valid access card and subscription.

Borow was the owner of the America Online ("AOL") account name "ump25@aol.com" until the summer of 2003. Between November 2000 and March 2003, over 1,000 messages were posted from the email address ump25@aol.com, on various Internet forums that are devoted to the piracy of DT's satellite signal. Such forums included "alt.dss.hack" and "piratesden.com." These messages included specific technical instructions on how to obtain DT's encrypted signal. In these pirate forums, ump25 expressed his proficiency in satellite piracy, and stated that he helped several relatives

---

[2] A "pirate" is someone who uses computer hardware and software to hack into DT's security system, and decrypts the television signal for his or her own use, without paying the subscription fee.

and friends set up their EMUs to pirate DT's signal. In September 2000, Borow set up a PayPal account[3] under the name ump25@aol.com. The shipping address attached to this PayPal account is the same as Borow's address in Lisle, Illinois. PayPal's records for ump25@aol.com's account shows that Borow used this online service to buy a six-month subscription to Decoder News, a piracy magazine. This subscription allowed Borow to access private areas on the magazine's website that were devoted to satellite piracy. In May 2002, Borow's account was used to renew a subscription to Pirates Den, another Internet forum related to piracy. In addition, PayPal's records show that Borow used this account to purchase twenty-four EMUs and two related software programs.

On October 16, 2003, five months after DT filed its Complaint, Borow contacted PayPal and told it that he thought someone had used his account without his permission. However, Borow never filed an online complaint form with PayPal, or pursued the matter any further. Later that month, Borow used a software program called Evidence Eliminator to erase evidence requested by DT from his computer. See Minute Order of 2/25/2004. Moreover, DT's forensics expert was able to recover some files from Borow's computer. These files included certain programs that are used by satellite pirates to intercept DT's encrypted signal. In addition, this expert was able to retrieve files that listed the names of piracy websites that Borow visited, including the private areas of Pirates Den that were only available to subscribers. In light of all these facts, Borow asserts that somebody else is responsible for these actions. Pl.'s Stmt. of Mat. Facts, Ex. 2 at 80-81, 127. Borow insists that he never lent his computer to anybody, and kept it in his apartment under lock and key. Id. at 26.

---

[3]PayPal is an online service that allows people to send and receive money to their bank accounts and credit cards.

## B. Procedural History

DT filed its Complaint on April 16, 2003. On December 11, DT filed a Motion for Sanctions, and a Motion to compel Borow's deposition. On December 19, the court ordered Borow to respond to DT's Motion for Sanctions for spoilation of evidence, and granted DT's Motion to compel Borow's deposition. On February 25, 2004, the court granted DT's Motion for Sanctions. Specifically, the court found that Borow deliberately destroyed evidence requested by Plaintiff. Then, on July 9, 2004, DT filed its Motion for Summary Judgment. Borow filed a Motion for extension of time to respond to the Summary Judgment motion, yet never actually filed any response. Therefore, DT's Motion for Summary Judgment has not been opposed by Borow as of this date.

## II. DISCUSSION

## A. Standard of Review

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999).

In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. See Fed. R. Civ. P. 56(c); see also

Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not appropriate if the court must make "a choice of inferences." See United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); see also First Nat'l Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

When a party moves for summary judgment, the court must view the record and all inferences in a light most favorable to the non-moving party. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the non-moving party's favor must be drawn from specific facts identified in the record that support that party's position. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Under this standard, "[c]onclusory allegations alone cannot defeat a motion for summary judgment." Thomas v. Christ Hospital and Medical Center, 328 F.3d, 890, 892-93 (7th Cir. 2003) (citing Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 888-89 (1990)).

## B. Borow's failure to comply with Local Rule 56.1

As a preliminary matter, Local Rule 56.1 requires each party opposing a motion pursuant to FED. R. CIV. P. 56 to file opposing affidavits and other materials referred to in FED. R. CIV. P. 56(e), a supporting memorandum of law, and a concise response to the movant's statement containing a response to each numbered paragraph in the moving party's motion. United States Dist. Court, N. Dist. of Ill. LR 56.1(b). In addition, "all properly supported material facts set forth in either parties' statement are deemed admitted unless properly controverted by the opposing party." Swanson v. Allstate Ins. Co., 102 F. Supp. 2d 949, 954 (7th Cir. 2000); see also Corder v. Lucent Technologies, Inc., 162 F.3d 924 (7th Cir. 1998). In order to "properly controvert" a movant's factual statement, the

5

nonmovant must cite to evidence; a mere denial of supported factual assertion is insufficient to create a genuine dispute. Swanson, 102 F. Supp. 2d at 954, quoting Flaherty v. Gas Research Inst., 31 F.3d 451, 453 (7th Cir. 1994).

Here, Borow did not strictly comply with Local Rule 56.1. First and foremost, he never responded to DT's Motion for Summary Judgment. The only statements the court has from Borow are found in his deposition and Answer to the Complaint. Even if these pleadings could be construed as responses, they still are insufficient to comply with the Rule 56.1. In his Answer and deposition, Borow simply denies all wrongdoing, without citing to any new evidence. Therefore, the facts in DT's LR56.1 statement are deemed admitted, and as a result, Borow has not raised any genuine issues of material fact. However, with an abundance of caution, the court will analyze DT's Motion and rule on its substantive merits.

## C. DirecTV's Motion for Summary Judgment

### *1. Borow's violation of the Federal Communications Act, 47 U.S.C. § 605*

The Federal Communications Act ("FCA"), 47 U.S.C. § 605(a) states in part, "no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communications by radio and use such communications. . . for his own benefit or for the benefit of another not entitled thereto." The FCA allows for a private cause of action on behalf of individuals and companies who have been damaged by the unauthorized use of their signals. "Any person aggrieved by any violation of subsection (a) of this section. . . may bring a civil action in a United States district court." 47 U.S.C. § 605(e)(3)(A). In addition, private parties may recover attorneys fees, damages, and equitable relief. Id. Therefore, summary judgment is appropriate if: (1) DT is an aggrieved party under § 605(e)(3)(A); (2) the communications Borow used were classified as interstate or foreign; and (3) Borow received and viewed without authorization the communication for his private use.

6

First, it is not disputed that DT is an injured party. The only way a viewer can lawfully see any of DT's programs is through the purchase of a subscription package. In addition, DT has invested millions of dollars in security and protection of its encrypted signals. Therefore, whenever an unauthorized user obtains access to DT's signal without payment, the company loses money. The loss of revenue alone is enough to classify DT as an aggrieved party. Second, the communication at issue, satellite television signals, are considered interstate in nature, and are therefore within the scope of § 605(a). See U.S. v. Norris, 88 F.3d 462, 468 (7th Cir. 1996). Lastly, Borow's descriptions of his piracy exploitations are the final nail in his coffin. The record is replete with numerous examples of Borow's knowledge of piracy techniques on various Internet message boards. "I ain't a newbie. I fully understand emulation and I have 2 systems up and running and support several friends and relatives who are also cruising along on EMU." Compl., Ex. I; Pl.'s Stmt. of Mat. Facts, Ex.3, ¶ 2-6. There is no need for repetition of Borow's many other messages. Therefore, summary judgment is granted for DT as to its claim under the FCA.

## *2. DT's claim under the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(1)*

The Digital Millennium Copyright Act ("DMCA") states that: "No person shall circumvent a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(1). In addition, the act allows for "any person injured by violation of §§ 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation." 17 U.S.C. § 1203(a). Therefore, in order for DT to prevail under this count, it must show that: (1) Borow circumvented a technological measure that; (2) effectively controls access; (3) to a protected work.

First, it is clear that Borow circumvented a technological measure, for purposes of § 1201(a)(1). DT has submitted copies of Internet forum sites that show the screenname ump25 openly admits that he has pirated DirecTV, as well as assisted others in such endeavors. Borow's own PayPal

7

records show that he purchased devices commonly used to emulate DT's satellite signal. Borow's computer also contained software commonly used to pirate satellite television.

Second, it is undisputed that DT uses measure to control access to its satellite programing. As stated in its LR 56.1 statement, DT goes through extensive security and encryption methods to ensure that only paid subscribers may watch DT's product. The only lawful way a viewer can watch satellite television is through a subscription purchase. DT has attempted to implement an effective and secure means for subscribers to access their signal.

Lastly, DT's programming content is protected by copyright. DT produces some original content to which it has the sole copyright, but it also obtains the copyright to provide viewers access to shows copywritten by third parties such as cable networks, movie distributors, and sports leagues. Therefore, it is undisputed that DT has a copyright over its content that it sends to viewers via its encrypted signal.

As a result of his failure to respond to these claims in DT's motion, Borow has not raised a genuine issue of material fact as to whether he violated the DCMA. His only defense is found in his Answer, where Borow simply denies all wrongdoing, yet offers no new evidence to support his claim. Therefore, summary judgment is granted for DT as to its claim under the DMCA.

### *3. Borow's violation of the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a)*

The Federal Wiretap Act ("FWA"), as codified in 18 U.S.C. § 2511 states, in part, that: "anyone who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication. . . shall be punished as provided in subsection (4) or shall be subject to suit provided in subsection (5)." 18 U.S.C. § 2511(1)(a). Moreover, the FWA provides a private cause of action for those who have had their communications intercepted under § 2511(1). 18 U.S.C. § 2520(a) allows for "any person whose wire, oral, or

8

electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity. . . which engaged in that violation such relief as may be appropriate." Such remedies include damages, equitable relief, and reasonable attorney's fees. See 18 U.S.C. § 2520(b). Therefore, DT can recover from Borow under this act if it can establish that Borow: (1) intentionally; (2) intercepted, endeavored to intercept, or procured another person to endeavor to intercept; (3) the contents of its electronic communications; (4) using a device.

First, the evidence demonstrates that Borow acted intentionally in every aspect of his endeavor. Borow's statements on the Internet discussion boards demonstrate that he was aware of his actions, and consciously undertook to intercept DT's encrypted signal. "Well, I emulate." Pl.'s Stmt. of Mat. Facts, Ex. 2A; see Pl.'s Stmt. of Mat. Facts, Ex. 1B at 2; Ex. 3C; Ex. 1G at 5. Second, as the PayPal records demonstrate, Borow intercepted and aided others in intercepting DT's encrypted signal. See Pl.'s Stmt. of Mat. Facts, Ex. 3, ¶ 3-5. Third, it is undisputed that the sole purpose of EMUs and other piracy devices is to gain unauthorized access to DT's signal. The Seventh Circuit has held that satellite television transmissions are "communications" under the Wiretap Act. See U.S. v. Shriver, 989 F.2d 898 (7th Cir. 1992). Fourth, Borow used the EMUs for the unauthorized use of DT's encrypted signal. Borow admitted this in the Pirate's Den Internet forum, as well as on other Internet sites dedicated to piracy. "I support about a dozen friends/relatives, all emulating since February 2001." Id; Ex. 3J.

In addition, Borow's own PayPal receipts support DT's claim that Borow used a device to circumvent DT's security measures. Borow ordered several different emulation devices, and had them delivered to his home. The fact that Borow ordered more than one EMU unit is even stronger evidence that he had the intent to aid others in the unauthorized use of satellite television. Faced with such evidence, Borow's only explanation is that he did not order these devices. A blanket denial,

9

without supporting evidence, does not raise a genuine issue of material fact, and therefore summary judgment is appropriate in favor of DT as to their claim under the FWA.

In addition, after Borow attempted to remove any evidence of piracy from his computer's hard drive, DT's technician was able to recover some files that were used to help him pirate DT's signal. However, other files were permanently deleted. A party's spoilation of evidence relevant to the cause of action entitles the opposing party to a presumption that the document, if produced would have been unfavorable to the party who destroyed the evidence. See Park v. City of Chicago, 297 F.3d 606, 616 (7th Cir. 2002). The relevant issue is "not that the evidence was destroyed, but rather, the reason for the destruction." Park, 297 F.3d at 616 (quoting S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co., 695 F.2d 253, 258 (7th Cir. 1982)).

The fact that Borow deleted certain files on his computer only five weeks after the start of this litigation creates an inference that he destroyed evidence that would have been harmful to his defense. See Park, 297 F.3d at 615. When confronted with these facts, Borow's only defense is that he deleted personal files, such as tax returns. However, this explanation does not account for the existence of several other satellite television piracy programs that were still on Borow's computer when it was surrendered to DT. The court already found that Borow acted in bad faith and deliberately destroyed evidence relevant to this action. See Minute Order of 2/25/2004. As a result, DT is entitled to a presumption that the documents destroyed by Borow would not have favored his defense. See Park, 297 F.3d at 615. Borow does nothing to rebut this presumption. He instead simply asserts that some other person did all this. Pl.'s Stmt. of Mat. Facts, Ex. 2 at 80-81, 127. However, in light of all the evidence produced by DT, the sanctions levied against Borow, and Borow's failure to provide a reasonable rebuttal to any of the Counts, the court finds this defense without merit.

## III. CONCLUSION

For the reasons stated above, the court grants the Plaintiff's Motion for Summary Judgment.
IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, SR. Judge
United States District Court

DATED: 1-3-05